**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3225-24

ESTATE OF CHRISTOPHER M.
WALSH and NANCY J. RICANY,
individually,

     Plaintiffs-Respondents,

v.

RYAN WALSH, individually,

     Defendant-Appellant,

and

RICHARD S. GEBBIA II, individually,
MICHAEL RUVO, individually, and
T.E. CAPITAL HOLDINGS, LLC,

     Defendants,

and

ESTATE OF MAUREEN WALSH,

     Defendant/Third-Party
     Plaintiff,

v.

PAUL O'BRIEN and NANCY J. RICANY,

        Third-Party Defendants-Respondents.

_____

Submitted April 21, 2026 – Decided July 28, 2026

Before Judges Gooden Brown and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000091-23.

McCarter & English, LLP, attorneys for appellant (Christopher D. Adams, of counsel and on the briefs; Marjan Moussavian, Taylor A. Collins and Esther Hwang, on the briefs).

Montenegro Thompson Montenegro & Genz, attorneys for respondents (Sebastian Ferrantell, on the brief).

PER CURIAM

Defendant Ryan Walsh appeals from an April 30, 2025 Chancery Division order, made final by a June 13, 2025 order, see R. 4:42-2, denying his request for frivolous litigation sanctions and counsel fees against plaintiffs/third-party defendants, the Estate of Christopher M. Walsh, Paul O'Brien, and Nancy J. Ricany (collectively, plaintiffs). Because we conclude the denial of sanctions and fees was a proper exercise of the Chancery judge's discretion, see Bove v. AkPharma Inc., 460 N.J Super. 123, 146 (App. Div. 2019), we affirm.

2

A-3225-24

I.

The underlying litigation between the parties was nothing short of contentious, triggering a protracted procedural history. Their bitter dispute over the family residence is well known to the parties, exhaustively described in their briefs, and need not be recited here in the same level of detail. We summarize instead the relevant facts and events pertinent to the issue raised on appeal.

The crux of the dispute concerned multiple conveyances of the Walsh family home in Beachwood (the Property). Edward Walsh and Maureen Walsh, husband and wife, purchased the Property in 1974. Three children were born of the marriage, including Christopher Walsh; Christopher's son, Ryan was their only grandchild.[1] In 1993, Christopher divorced Ryan's biological mother, Tammy L. Ellis, and Ryan lived with Christopher, Edward, and Maureen. Around 2012, Christopher allegedly began a relationship with Ricany, who was married to O'Brien.

Shortly after Edward's death in June 2013, Maureen executed a quit claim deed conveying the jointly-owned Property to herself. Thereafter, the Property was transferred multiple times among various individuals and entities:

---

[1] Because some of the parties share the same surname, following the initial mention of their names, we use first names for ease of reference. No disrespect is intended.

- January 2014 - Maureen to Christopher;

- January 2015 - Christopher to Ricany and himself as joint tenants;

- July 2016 - Christopher and Ricany to Christopher;

- June 2017 - Christopher to Ryan;

- December 2017 - Ryan to his limited liability company (Ryan's LLC); and

- May 2018 - Ryan's LLC to Christopher.

We glean from the record, the May 2018 transfer to Christopher was made pursuant to an April 2018 stipulation of settlement among the parties in Christopher's and Maureen's order to show cause application against Ryan and his LLC following eviction proceedings instituted by Ryan against his father and grandmother in landlord tenant court.

In March 2019, Christopher executed his last will and testament (LW&T), granting Maureen a life estate in the Property and providing, "[s]he will be responsible for the taxes, mortgage, utilities until the time of her death or at which time she moves out of the property." Christopher bequeathed the remainder of his estate to Ricany, appointed O'Brien executor, and "intentionally" excluded Ryan "for reasons best known to him." One month after he executed the LW&T, Christopher died, survived by Maureen and Ryan.

4

In November 2019, Ryan filed a self-represented complaint in the Probate Part, challenging the validity of Christopher's LW&T. In his complaint, Ryan alleged the LW&T was the product of O'Brien's and Ricany's undue influence over Christopher. In June 2020, the probate court dismissed the complaint on O'Brien's and Ricany's motion for failure to timely file the caveat to probate the will within the time prescribed by Rule 4:85-1.

Thereafter, the taxes were not paid on the Property. T.E. Capital Holdings, LLC (T.E. Capital) purchased the tax lien and, in August 2022, filed a complaint to foreclose on the tax sale certificate.[2] In support of the application, Michael Ruvo, a Beachwood code enforcer, certified the property was abandoned (abandoned property certification). See N.J.S.A. 54:5-86. That same day, T.E. Capital filed a notice of lis pendens with the Ocean County Clerk. After O'Brien redeemed the tax lien, T.E. Capital dismissed the foreclosure complaint and discharged the lis pendens.

---

[2] In an ensuing certification to quash O'Brien's and Ricany's subpoena for T.E. Capital's litigation file, Ryan certified the company was owned by his mother, Ellis. Ryan further certified he held power of attorney for Ellis from 2019 until her death in November 2021, and was T.E. Capital's "principal point of contact." We glean from the record, Richard S. Gebbia II was T.E. Capital's registered agent and managing member.

In June 2023, O'Brien, as executor of Christopher's estate, filed a declaratory judgment action against Maureen, seeking to terminate her life estate in the Property. In the complaint, O'Brien asserted, as the life tenant, Maureen "[wa]s solely responsible for the payment of real estate taxes," failed to do so, committed waste, failed to maintain the property, and did not live in the home. O'Brien further asserted he was Ricany's substitute guardian.

In August 2023, Maureen answered the complaint and asserted affirmative defenses and counterclaims against Christopher's estate and O'Brien. Maureen also filed a third-party complaint against O'Brien and Ricany. In her counterclaims and third-party complaint, Maureen alleged various causes of action, including two fraud counts. In essence, Maureen alleged O'Brien's and Ricany's fraudulent acts caused her to lose the Property.

In September 2023, Ruvo was charged in a complaint-summons with official misconduct for, among other things, submitting the abandoned property certification "in a court proceeding to foreclose on the [P]roperty," knowing the Property was not abandoned. According to the complaint, Ruvo knew the

abandoned property certification "would have assisted R.W. and a closely related entity with securing the [P]roperty through the foreclosure proceeding."[3]

Motion practice ensued. In October 2023, plaintiffs applied for an order to show cause, requesting the court terminate Maureen's life estate. In his supporting certification, O'Brien asserted Maureen "failed to make the taxes and sewer payments as a sham to cause the tax sale and allow Tammy and Ryan to obtain title to the premises through the LLC, formed for this purpose." In March 2024, Maureen moved for a preliminary injunction preventing plaintiffs "from executing a deed vesting ownership of the [P]roperty . . . pending the conclusion of this proceeding" and "attempting to access the Property pending such [o]rder."

In April 2024, plaintiffs opposed Maureen's motion and cross-moved for leave to amend their complaint to add Ryan as a defendant. Maureen opposed plaintiffs' motion; the Chancery judge denied Maureen's motion; and plaintiffs thereafter withdrew their cross-motion.

---

[3] In February 2025, Ruvo waived his right to indictment and, relevant here, pled guilty to an accusation charging him with one count of third-degree theft by deception. In his factual basis, Ruvo admitted, when he executed the abandoned property certification, he knew the Property was not abandoned and he "essentially lie[d] on the certification for the purposes of assisting under the foreclosure proceeding on the Property."

In June 2024, plaintiffs again moved to amend the complaint. This time, they sought to add Ryan, Gebbia, Ruvo, and T.E. Capital as defendants. Relevant here, in their proposed amended complaint, plaintiffs alleged Ryan committed common law fraud, frivolous litigation, and tortious interference.

In his certification in support of the motion, O'Brien alleged the proposed defendants participated in a common scheme to defraud Christopher's estate. During extensive oral argument before the same Chancery judge, plaintiffs' counsel detailed the scheme, explaining how it became known over the course of discovery.

At the conclusion of arguments on four motions, the Chancery judge issued an oral decision and an August 2, 2024 order, granting plaintiffs' motion to amend the complaint. Pertinent to this appeal, the judge squarely addressed the liberal pleading standard, see Zacharias v. Whatman PLC, 345 N.J. Super. 218, 226 (App. Div. 2001), in view of the court's discretionary standard, see Kernan v. One Washington Park Urb. Renewal Assocs., 154 N.J. 437, 457 (1998). Crediting plaintiffs' argument that the culpability of Ryan, Gebbia, and Ruvo "was only determined as a result of ongoing discovery," the judge found these defendants "should be added in the interest of justice."

A-3225-24

Addressing the elements of a common law fraud claim, see Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997), the judge was satisfied the proposed amended complaint asserted "sufficient allegations to satisfy all those elements . . . such that the complaints can be maintained."  The judge elaborated: "As we go forward with discovery obviously they would be subject to motion. But it's not sufficient for me to deny the ability to make these claims, as I'm required to do, assuming that all the allegations are correct at this point."

Three months later, on November 4, 2024, Ryan moved to dismiss the amended complaint under Rule 4:6-2(e).  In his moving brief, Ryan asserted plaintiffs' fraud claim was not pled with specificity because:  the claim "combine[d] all defendants without explanation for what each party did"; plaintiffs "did not suffer damages"; and plaintiffs did "not rely on any statement, false or otherwise made by Ryan . . . to their detriment."  Ryan also argued plaintiffs failed to sufficiently assert a tortious interference claim and all claims against him were barred under the entire controversy doctrine.

On November 14, 2024, Ryan served plaintiffs a frivolous litigation letter, echoing the contentions raised in his motion, thereby placing plaintiffs on notice they knew or should have known their complaint had no reasonable basis in law.

Ryan requested plaintiffs withdraw their claims against him. Plaintiffs did not withdraw their claims, or otherwise respond to Ryan's safe harbor letter.

Following arguments on January 6, 2025, the present Chancery judge dismissed with prejudice plaintiffs' amended complaint against Ryan. Pertinent to this appeal, the judge recognized plaintiffs were permitted to amend their complaint pursuant to their fraudulent transfer theory and noted plaintiffs essentially alleged "a conspiracy to start this tax foreclosure under an abandonment theory." But the judge found plaintiffs later paid the taxes due "without any penalty and suffer[ed] no harm" because the tax foreclosure action was dismissed. Accordingly, the judge dismissed plaintiffs' fraud claims against Ryan, Maureen, Gebbia, and Ruvo, finding plaintiffs did not rely upon a misrepresentation to their motions or suffer damages.[4]

Ryan thereafter moved for frivolous litigation sanctions and counsel fees pursuant to N.J.S.A. 2A:15-59.1 and Rule 1:4-8. During oral argument before the present Chancery judge, Ryan's counsel argued plaintiffs "were put on notice

---

[4] In his decision, the Chancery judge left intact plaintiffs' tortious interference claim against Maureen, permitting plaintiffs "to litigate any issues of interference with [their] property rights, if it is ultimately determined that the obligation to pay the taxes was on Maureen rather than on the executor[,]" O'Brien.

very early on in this case that they knew or should have known that the complaint was without any reasonable basis in law."

At the conclusion of arguments, on April 30, 2025, the Chancery judge issued an oral decision, denying Ryan's motion. The judge reasoned, in pertinent part:

> Under [Rule] 1:4-8, the court looks to the rule, looks to the purpose of joinder. And . . . I think it's fair to say, in anyone's estimation, that this is a tortured procedure where there were many people who were brought into relationships that otherwise, I think most observers would consider to be uncommon. There were difficult relationships, there were different interests that were being exchanged.
>
> [P]laintiffs took the position that they wanted to amend the complaint. That application went before [the previous Chancery judge]. He reviewed the application, determined that there was a prima facie case of fraud, allowed the complaint to be amended, and then litigation proceeded. Ultimately, it came before this court, and it was dismissed on a [Rule] 4:6-2[(e)] application . . . .
>
> But the court is well satisfied that this is not a situation where this was an application that was punitive in nature; that the court understood that there, at least on its face, was an application to be made to pursue fraudulent dealings.
>
> The court will compel each party to pay its own attorneys' fees under the American rule. The court doesn't find anything egregious about the litigation. I think the parties in this case have a great deal of

> explaining to do as to how they got to their relative positions and whether or not they can support their interests in the property that is now under dispute.
>
> The court is not going to grant the application for the attorneys' fees and deny it. The court finds that the parties did not violate their obligations under Rule 1:4-8.

On appeal, Ryan maintains frivolous litigation sanctions and counsel fees were warranted, arguing the Chancery judge "failed to consider the relevant factors set forth in [N.J.S.A. 2A:15-59.1] and Rule 1:4-8 in reaching [his] decision." Citing our decisions in Bove and DeBrango v. Summit Bancorp, 328 N.J. Super. 219 (App. Div. 2000), Ryan argues a claim filed in good faith is subject to sanctions if "it becomes known . . . over the course of litigation that the litigation is frivolous." Ryan asserts plaintiffs' complaint "was initiated and pursued in bad faith as there was no basis in law or equity to support" their claim Maureen was obligated to pay taxes. Reiterating the contentions supporting his successful dismissal motion, Ryan claims the duty to pay taxes lay with O'Brien, as executor of Chrisopher's estate, not Maureen.

## II.

Rule 1:4-8 authorizes sanctions against attorneys and pro se parties for frivolous litigation. The Rule supplements N.J.S.A. 2A:15-59.1, which permits the trial court to award to a prevailing party in a civil action "all reasonable

12

litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the non[-]prevailing person was frivolous." N.J.S.A. 2A:15-59.1(a)(1); see also Toll Bros., Inc. v. Twp. of W. Windsor, 190 N.J. 61, 69-73 (2007). To find a pleading was frivolous, the trial court must conclude the filing was made "in bad faith solely for the purpose of harassment, delay or malicious injury," N.J.S.A. 2A:15-59.1(b)(1), or "[t]he non[-]prevailing party knew, or should have known" the filing "was without any reasonable basis in law or equity," N.J.S.A. 2A:15-59.1(b)(2).

"Sanctions are not to be issued lightly; they are reserved for particular instances where a party's pleading is found to be 'completely untenable,' or where 'no rational argument can be advanced in its support.'" McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 499 (App. Div. 2011) (quoting United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009)); see also Bove, 460 N.J. Super. at 151 (noting sanctions under Rule 1:4-8 and N.J.S.A. 2A:15-59.1 are "awarded only in exceptional cases"). Indeed, we have long recognized a consideration of Rule 1:4-8 sanctions requires that judges "give a 'restrictive interpretation' to the term 'frivolous' in order to avoid limiting access to the court system." United Hearts, 407 N.J. Super. at 390 (quoting First Atl. Fed. Credit

13

Union v. Perez, 391 N.J. Super. 419, 433 (App. Div. 2007)); see also McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 561-62 (1993).

Accordingly, "[w]hen the [non-prevailing party's] conduct bespeaks an honest attempt to press a perceived, though ill-founded and perhaps misguided, claim, he or she should not be found to have acted in bad faith." Bove, 460 N.J. Super. at 151 (second alteration in original) (quoting Belfer v. Merling, 322 N.J. Super. 124, 144-45 (App. Div. 1999)). Simply because "some of the allegations made at the outset of litigation later prove[] to be unfounded does not render [the complaint] frivolous." Id. at 148 (quoting Iannone v. McHale, 245 N.J. Super. 17, 32 (App. Div. 1990)). We have nonetheless recognized "litigation may become frivolous, and therefore sanctionable, by continued litigation over a meritless claim, even if the initial pleading was not frivolous or brought in bad faith." Id. at 152. "This is because the 'requisite bad faith or knowledge of lack of well-groundedness may arise during the conduct of the litigation.'" Ibid. (quoting United Hearts, 407 N.J. Super. at 390); see also DeBrango, 328 N.J. Super. at 226.

In view of these governing principles, and our discretionary standard of review on a sanctions motion, we decline to disturb the April 30, 2025 order. As the judge recognized, plaintiffs filed their amended complaint on leave

14

granted by the prior Chancery judge, who had found "a prima facie case of fraud" and "allowed the complaint to be amended." The present judge ultimately found plaintiffs' application to amend their complaint was not "punitive in nature" because "on its face," the amended complaint asserted "fraudulent dealings." Essentially, the judge concluded plaintiffs did not act in bad faith. The record supports the judge's determination. On this record, we cannot conclude this was an "exceptional case," see Bove, 460 N.J. Super. at 151, warranting Ryan's application for frivolous litigation sanctions and counsel fees.

To the extent not addressed, Ryan's remaining arguments lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

15                                                                        A-3225-24